IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CHEVRON PUERTO RICO, LLC,

        Plaintiff

           v.

ÁNGEL J. MARTÍNEZ-VALENTÍN, et al.,

        Defendants

CIVIL NO. 10-1192 (JP)

## OPINION AND ORDER

By way of background, Plaintiff Chevron Puerto Rico, LLC ("Chevron") previously filed a motion for a temporary restraining order ("TRO") and preliminary injunction (No. 2). The Court denied Plaintiff's motion for a temporary restraining order and ordered Plaintiff to submit any additional relevant evidence not already attached to the complaint to support granting a preliminary injunction (No. 4). Before the Court is Plaintiff's said motion, Defendant Ángel J. Martínez-Valentín's ("Martínez") opposition thereto (No. 18), and Plaintiff's reply (No. 23).[1] Plaintiff

---

1. Pending before the Court are also Plaintiff's: (1) motion requesting a permanent injunction **(No. 12)**; (2) emergency motion requesting an order granting a permanent injunction **(No. 24)**; (3) motion for a hearing on the issue of a permanent injunction and Plaintiff's damages **(No. 25)**; and (4) motion for default entry **(No. 26)**. Plaintiff's motions for a permanent injunction (No. 12), requesting an order granting a permanent injunction (No. 24), and for a hearing on the issue of a permanent injunction and Plaintiff's damages (No. 25) are hereby **DENIED** at this point in the proceedings. In light of the Court's orders at Docket Numbers 15 and 19 granting Defendant an extension of time to file a responsive pleading, Plaintiff's motion for default entry (No. 26) is **DENIED**.

CIVIL NO. 10-1192 (JP)          -2-

Chevron, previously known as Texaco Puerto Rico, Inc. and Texaco Puerto Rico, LLC requests that the Court enter a TRO and preliminary injunction ordering Defendant Martínez to: (1) immediately surrender to Chevron the gasoline service station number 622 located at 5 de Diciembre Avenue #110, Sabana Grande, Puerto Rico (the "Station") and all tanks and equipment located therein; (2) immediately comply with all other post-termination covenants of the lease and supply agreements between the parties; and (3) refrain from using the Texaco marks.   For the reasons stated herein, Plaintiff's motion for preliminary injunction is **GRANTED.**

I.   <u>FACTUAL BACKGROUND</u>

    Plaintiff Chevron, previously known as Texaco Puerto Rico, LLC and Texaco Puerto Rico, Inc., filed the instant action against Defendant Martínez, John Doe and ABC Company, Inc. alleging claims for trademark infringement and dilution in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.* ("Lanham Act") and the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125 *et seq.* ("Trademark Dilution Revision Act"); for cancellation of the franchise agreement pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.* ("PMPA"); for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure ("FRCP"); for damages for breach of contract and loss of business or income pursuant to Articles 1044, 1054, 1077

CIVIL NO. 10-1192 (JP)          -3-

and 1206 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 2994, 3018, 3052, 3371, *et seq.*; lessee dispossession pursuant to Article 1459 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 4066; and damages under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141.

On March 18, 2009, Defendant Martínez entered into two agreements with Plaintiff Chevron: (1) a lease agreement ("Lease"); and (2) a supply agreement ("Supply Agreement").  The Lease was for the use of the real property located at 5 de Diciembre Avenue #110, Sabana Grande, Puerto Rico, in order to operate the Station.  The Lease term was for a period of three years starting on April 1, 2009 and ending on March 31, 2012.  Pursuant to its terms, the Lease converts to a month by month tenancy if Defendant Martínez retains possession of the premises at the end of the three-year term.  The Lease provides that Defendant Martínez must pay Chevron a monthly rent.  The Lease also provides that Defendant must pay each delivery of the Texaco petroleum products with cash or by electronic transfer or ACH.  The Lease stated that Defendant Martínez is obligated to use the property as a gasoline service station to sell Texaco branded petroleum products, merchandise and services normally rendered at Chevron's gasoline and service stations.  The Lease also provides that if Defendant Martínez fails to comply with any of his duties under the Lease, Chevron may terminate the Lease.

CIVIL NO. 10-1192 (JP)              -4-

     Under the terms of the Supply Agreement, Defendant Martínez is
granted the right to buy for resale Texaco branded petroleum products
and to operate the Station under the Texaco trademark.  The Supply
Agreement is for a period of three years and continues in effect as
long as the Lease continues in effect.  The Supply Agreement states
that payment of each delivery will be in cash prior to receiving the
product.  The Supply Agreement also states that Defendant Martínez
would only use the marks, registered marks, trademarks, names,
service distinctions, and/or color patterns that Chevron authorizes.
In addition, Defendant Martínez is required to comply with all the
applicable environmental laws and regulations.  Pursuant to the
Supply Agreement Plaintiff can suspend the delivery of petroleum
products and terminate the agreement if Defendant fails to comply
with the terms of said agreement.

     Plaintiff alleges that Defendant Martínez has repeatedly
breached the terms of the Lease and Supply Agreement because he has
refused to pay for rent and gasoline products.  Defendant Martínez
owes Chevron a total of $77,109.01 for rent, petroleum products and
other products sold and delivered.  Defendant Martínez has failed to
have Texaco products available for consumers and is selling other
brands of gasoline through Texaco's equipment.  Plaintiff alleges
that Defendant's selling of non-Texaco branded gasoline has affected
Chevron's market share.

CIVIL NO. 10-1192 (JP)          -5-

     On December 4, 2009, Plaintiff's counsel sent Defendant Martínez a written notice terminating the franchise relationship, effective ten days from the letter due to Defendant Martínez's violations of the Lease and Supply Agreements and the PMPA, 15 U.S.C. § 2802, *et seq.*  The termination notice explained that the franchise relationship was being terminated because of Defendant Martínez's failure to pay the amounts owed to Chevron.  The termination notice requested that Defendant Martínez surrender control of the Station to Chevron and included a summary statement by the Secretary of Energy pursuant to Article 104(c)(3)© of the PMPA, 15 U.S.C. § 2804(c)(3)(c).  On January 8, 2010, Chevron's counsel sent Defendant's counsel a supplemental letter stating that the franchise relationship was being terminated, effective immediately due to Defendant Martínez's failure to comply with the Lease and the Supply Agreement.

     Defendant allegedly continues to display signs bearing Plaintiff's trademarks and refuses to surrender the Station and the store.  Chevron alleges that Defendant Martínez's actions potentially expose Chevron to liability under environmental laws, rules and regulations.

     On March 5, 2010, Plaintiff filed the instant complaint.  Plaintiff alleges that to date Defendant has failed to surrender control of the station and has refused to pay the amounts owed.  In

CIVIL NO. 10-1192 (JP)          -6-

addition, Plaintiff argues that due to the termination of the Lease and Supply Agreements, Defendant is no longer entitled to utilize Plaintiff's Texaco trademarks.  Plaintiff alleges that Martínez continues to utilize the Texaco marks at the station, thus violating the Lanham Act.

II.  **LEGAL STANDARD FOR A PRELIMINARY INJUNCTION**

The general purpose of injunctive relief is to prevent future acts or omissions of the non-movant that constitute violations of the law or harmful conduct.  <u>United States v. Oregon Med. Soc.</u>, 343 U.S. 326, 333 (1952).  The United States Court of Appeals for the First Circuit has set forth a four part test for trial courts to use when considering whether to grant preliminary injunction requests. <u>Lanier Prof. Serv's, Inc., v. Ricci</u>, 192 F.3d 1 (1st Cir. 1999); <u>Narragansett Indian Tribe v. Guilbert</u>, 934 F.2d 4, 5 (1st Cir. 1991). A preliminary injunction is appropriate if: (1) the petitioner has exhibited a likelihood of success on the merits; (2) the petitioner will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting injunctive relief would inflict on the respondent; and (4) the public interest will not be adversely affected by granting the injunction.  <u>Narragansett Indian Tribe</u>, 934 F.2d at 5; <u>see</u> <u>e.g.</u>, <u>Aoude v. Mobil Oil Corp.</u>, 862 F.2d 890, 892 (1st Cir. 1988); <u>Hypertherm, Inc. v. Precision Products, Inc.</u>, 832 F.2d 697, 699 n.2 (1st Cir. 1987).  Whether to

CIVIL NO. 10-1192 (JP)          -7-

issue a preliminary injunction depends on balancing equities where the requisite showing for each of the four factors turns, in part, on the strength of the others.  Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611-13 (1st Cir. 1988). Although a hearing is often held prior to entry of a preliminary injunction, a hearing is not an indispensable requirement.  Aoude, 862 F.2d at 893.

III. **ANALYSIS**

   A.    **Motion for Preliminary Injunction**

   Plaintiff Chevron requests that the Court enter a preliminary injunction ordering Defendant to immediately surrender to Chevron the Station, including its underground storage tanks and equipment, and to comply with all post-termination covenants of the Agreements, including discontinuing use of the Texaco marks.  The Court shall now consider Plaintiff's arguments in light of First Circuit's preliminary injunction standard.

      1.    **Likelihood of Success on the Merits**

         a.    *Plaintiff's Breach of Contract and PMPA Claims*

   Plaintiff argues that it is likely to succeed on the merits of its breach of contract and PMPA claims because Defendant has violated the terms of the Agreements, and because the PMPA requirements for termination of the Agreements and initiation of a civil enforcement action have been met.  The PMPA provides, in relevant part,

CIVIL NO. 10-1192 (JP)            -8-

> Any franchisor may terminate any franchise . . . or may
> fail to renew any franchise relationship [for the
> following reasons, subject to certain timing and
> notification requirements] . . .
>
> (A) A failure by the franchisee to pay the franchisor in
> a timely manner when due all sums to which the franchisor
> is legally entitled . . .
>
> (B) A failure by the franchisee to exert good faith
> efforts to carry out the provisions of the franchise . . .
>
> © The occurrence of an event which is relevant to the
> franchise relationship and as a result of which
> termination of the franchise or nonrenewal of the
> franchise relationship is reasonable . . .

15 U.S.C. § 2802(b)(2). The PMPA requires written notice to the franchisee ninety days in advance of a termination or non-renewal, although it allows for a lesser period when ninety days is unreasonable under the circumstances. 15 U.S.C. § 2804.

In the instant case, Plaintiff has submitted evidence indicating that Defendant Martínez has failed to pay Chevron rent and amounts owed for gasoline delivered, in an amount of $77,109.01 (No. 7-2 and 7-3). As such, Plaintiff is likely to succeed in showing that cause for termination of the Agreements exists pursuant to the above-cited subsection (A), which lists failure to pay as a valid ground for termination.

On December 4, 2009, Plaintiff's counsel sent Defendant written notice that the franchise relationship between the parties was being terminated, effective in thirty (30) days due to Defendant's failure to pay amounts owed for products sold and delivered. A summary

CIVIL NO. 10-1192 (JP)          -9-

statement prepared by the Secretary of Energy was included in the termination notice as required by the PMPA.  On January 8, 2010, Plaintiff's counsel sent a supplemental letter to Defendant's counsel stating that the franchise relationship was being terminated, effective immediately due to Defendant's continued failure to pay amounts owed and for selling non-Texaco branded gasoline through Texaco equipment in violation of the parties' Agreements and the PMPA.  Another summary statement was included in the supplemental letter.  Plaintiff's notice of termination complied with the requirements of the relevant section of the PMPA, 15 U.S.C. § 2804.

In light of the termination of the Lease, Defendant was no longer entitled to utilize the Station, and was therefore required to turn over control to Plaintiff.  Plaintiff's evidence indicates that Defendant Martínez has not surrendered the Station as required.  Under such circumstances, an injunction ordering dispossession is an appropriate remedy.  Total Petroleum Puerto Rico Corp. v. T.C. Oil, Corp., No. 09-cv-1105, 2009 WL 702226, at *7 (Pieras, J.).  After examining the arguments and evidence presented, the Court finds that Plaintiff has demonstrated a high likelihood of success on the merits of its breach of contract and PMPA claims.

### b.    Plaintiff's Lanham Act Claims

Chevron also argues that the facts demonstrate a likelihood of success on the merits of Plaintiff's claims brought pursuant to the

CIVIL NO. 10-1192 (JP)            -10-

Lanham Act, 15 U.S.C. § 1125(a). Section 1125(a) creates a cause of action for false designation of origin, false descriptions, and dilution. To prevail on a trademark claim under Section 1125(a), Plaintiff is generally required to establish that: (1) he uses and thereby owns a mark; (2) the defendant is using the same or a similar mark; and (3) the defendant's use is likely to confuse the public, thereby harming the plaintiff. Doral Pharmamedics, Inc. v. Pharm. Generic Developers, Inc., 148 F. Supp. 2d 127, 137 (D.P.R. 2001). The First Circuit has held that "the third element of the trademark cause of action, likelihood of confusion, is the central issue in finding trademark infringement." International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996).

    With regard to the first element, Plaintiff is the owner of the trademark "TEXACO" and the color combination, font, and design marks for its gasoline stations. Said marks have been registered in the United States Patent and Trademark Office under Registration Nos. 794,947, 2,206,861, 1,222,305, 2,162,226, 1,222,306, 1,222,306, 2,176,912, 2,259,016, 2,256,757, and related registrations (Nos. 1-4 and 1-5).

    With regard to the second element, Defendant's unauthorized use of the mark, Plaintiff has submitted photographs showing that Defendant continues to use Texaco's trade dress at the Station.

CIVIL NO. 10-1192 (JP)          -11-

While Defendant has covered the actual Texaco logo on the canopy, the Station's canopy is still painted in Texaco's color scheme of red and black.

With regard to the third element, likelihood of confusion, the evidence indicates that potential customers have no way of knowing that Defendant's business is anything other than an authorized Texaco station. According to Plaintiff, Defendant has been selling non-Texaco products through Texaco branded equipment. In addition, Plaintiff's photographs show that the Station continues to bear the Texaco trade dress of a red and black canopy. These actions create a significant likelihood of confusion among customers. On the basis of the evidence presented, the Court finds that Plaintiff has demonstrated a high likelihood of success on the merits of its Lanham Act claims.

## 2.   Irreparable Harm

The second factor in the preliminary injunction analysis is whether Plaintiff will suffer irreparable harm if the injunction is not granted. Narragansett Indian Tribe, 934 F.2d at 5. An injury will only be considered irreparable if no adequate remedy for the injury exists at law. See Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986). Monetary damages are usually not considered irreparable injuries. See DeNovellis v. Shalala, 135 F.3d 58, 64 (1st Cir. 1998) (holding that a temporary loss of

CIVIL NO. 10-1192 (JP)          -12-

income which may be recovered later does not generally constitute irreparable injury).  It is not required that a plaintiff establish that denial of injunctive relief would be fatal to its business; it is sufficient for a plaintiff to show that injury is not accurately measurable, given that irreparable harm is a natural sequel.  <u>See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 18 (1st Cir. 1996) (internal citations omitted).

Plaintiff contends that Defendant's failure to order fuel from Plaintiff and maintain continuous availability of Texaco fuel at the Station is harming Plaintiff's market share and customer goodwill in Puerto Rico.  Plaintiff also alleges that Defendant's selling of non-Texaco gasoline through Texaco's equipment has affected Plaintiff's market share. Plaintiff alleges that its market presence in the region has been developed over the course of nearly one hundred years, since 1911.  A loss of customer loyalty as a result of Defendant's actions could entail more than a temporary financial loss.  Rather, Plaintiff risks an ongoing reduction in market share due to consumers' opinion that the Station is not a reliable vendor of Texaco petroleum products.

Plaintiff also argues that, due to the termination of the Lease and Supply Agreement, Chevron can no longer exercise a contractual right to monitor and control the underground tanks associated with the Station.  This scenario exposes Chevron to risks of environmental

CIVIL NO. 10-1192 (JP)              -13-

damage and liability in the event that Defendant neglects to maintain the tanks properly.  Considering these risks and the significant potential harm due to loss of market share, the Court finds that Plaintiff has adequately demonstrated that it will suffer irreparable harm in the absence of a preliminary injunction.

### 3.   Balance of Hardships

The third factor in the analysis for a preliminary injunction requires Plaintiff to show that the irreparable harm that Plaintiff will suffer in the absence of the entry of a preliminary injunction outweighs any harm which granting injunctive relief would inflict on Defendant.  Narragansett Indian Tribe, 934 F.2d at 5.

In the instant case, the potential hardship to Defendant that would result from entry of a preliminary injunction is that Defendant would no longer be able to maintain control of the Station.  This hardship offers a weak counterbalance to the ongoing irreparable injury being suffered by Plaintiff.  The evidence indicates that Defendant does not have a right to continue his business operations following the termination of the Agreements.  As such, Defendant's potential losses from discontinuing his control of the Station are a result of Defendant Martínez's own breaches of contract. Accordingly, the Court finds that the balance of hardships weighs strongly in favor of Plaintiff.

CIVIL NO. 10-1192 (JP)          -14-

**4.   Public Interest**

The fourth and final factor in the preliminary injunction analysis requires the Court to consider whether the public interest will be adversely affected if the injunction is granted. Id. Here, the public interest is harmed when consumers are misled as to the source of the products being offered for sale at the retail store located in the Station. In addition, the environmental risks from unmonitored petroleum storage tanks also negatively affect the public interest. The Court notes that these risks are exacerbated by the fact that recently other service stations in Puerto Rico have similarly ceased operations due to the franchisee's noncompliance with contractual terms. See e.g., Total Petroleum Puerto Rico Corp., 2009 WL 702226 (Pieras, J.). In light of the potential harm to consumers and the public, the Court finds that the fourth factor further supports the entry of a preliminary injunction.

**IV.   CONCLUSION**

In conclusion, the Court **GRANTS** Plaintiff's motion for a preliminary injunction. Defendant is hereby **ORDERED** to: (1) immediately surrender to Chevron the Station, including its underground storage tanks and equipment; (2) immediately comply with all other post-termination covenants of the Agreements; and (3) refrain from using the Texaco marks. Plaintiff **SHALL** serve a copy of the complaint and this Opinion and Order upon Defendant, and

CIVIL NO. 10-1192 (JP)            -15-

**SHALL** file proof of service with the Court, on or before **January 21, 2011.**

    Further, pursuant to Federal Rule of Civil Procedure 65©, the Court **ORDERS** Plaintiff to give security in the amount of $2,000.00 to pay for costs and damages sustained by any party found to have been wrongfully enjoined or restrained.  Plaintiff **SHALL** deposit $2,000.00 as security with the Clerk of the Court within ten (10) days of the entry of this Order.

        **IT IS SO ORDERED.**

    In San Juan, Puerto Rico, this 10th day of January, 2011.


                                    s/José Antonio Fusté
                                    JOSÉ ANTONIO FUSTÉ
                                CHIEF U.S. DISTRICT JUDGE